J-A26045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: JORDAN SCARPELLI AN ALLEGED INCAPACITATED PERSON<br><br>APPEAL OF JUDITH L. SCARPELLI, MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br>No. 244 MDA 2014 |

Appeal from the Decree January 14, 2014
In the Court of Common Pleas of York County
Orphans' Court at No(s): 67-13-1740

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 07, 2014**

Judith L. Scarpelli ("Mother") appeals from a decree declaring her daughter, Jordan Scarpelli ("Daughter"), incapacitated and appointing Joseph Stallings ("Father")[1] plenary guardian of Daughter and her estate. We affirm.

---

[1] On October 31, 2013, a different judge than the judge herein awarded Father joint legal and physical custody of Daughter. This had no legal effect because Daughter attained 18 years of age ten days prior to the order. Although Father is not Daughter's biological father, he is the father of Daughter's half-sister, Savannah, and the trial court in its 1925(a) opinion refers to him as "Father." Accordingly, we do the same.

The trial court aptly set forth the pertinent factual and procedural history as follows:

> Jordan, the alleged incapacitated person, is an adult individual of 18 years who has a diagnosis of Down [S]yndrome. Jordan's biological father has not been a part of her life for at least 17 of her 18 years. In the summer of 1999, when Jordan was three years of age, Mother and Father began dating and cohabitating. They continued to cohabitate intermittently until 2005, when the relationship between Mother and Father was finally dissolved. Mother and Father's relationship resulted in the birth of Savannah Stallings—Jordan's 11 year old sister. Father and Jordan developed a strong bond during these periods of cohabitation, and Father has been acting in loco parentis. Jordan refers to Father as "daddy" and indicates that she misses him.
>
> Father continued to play an active role in Jordan's life despite the dissolution of his relationship with Mother. Since 2004, Father has attended nearly all Jordan's medical appointments and has been involved in her education plan through Dallastown High School. Father was awarded joint legal and physical custody of Jordan pursuant to an order entered October 31, 2013; however, Jordan had attained 18 years of age just ten days prior to the entry of said order. Jordan has become increasingly isolated since that time, as Mother has withheld Jordan from Father and several of Jordan's relatives on both sides of the family. Jordan has also been separated from her sister by virtue of the fact that Father has primary physical custody of Savannah Stallings.
>
> On October 31, 2013, Father filed a [p]etition seeking the adjudication of Jordan as an

incapacitated person, which proposed that he serve as Jordan's guardian. Mother then filed to the same docket a [p]etition dated January 10, 2014, which urged the court to appoint her as Jordan's guardian. A hearing was held on January 13, 2014 where Mother, Father, Jordan and their respective counsel were present.[2] An order was entered January 14, 2014 declaring Jordan incapacitated and appointing Father plenary guardian of the person and the estate. On February 7, 2014[,] Mother filed a notice of appeal and statement of errors complained of on appeal . . . .

Trial Court Opinion, 4/4/2014 ("Trial Court Opinion"), at 1-3.

Mother raises a single issue for review:

[I.] Whether the lower court abused its discretion in appointing the Mother's former boyfriend -- who is neither the biological father nor a relative -- plenary guardian of the Mother's eighteen-year-old daughter, a person with Down Syndrome, as opposed to the mother who has cared for her daughter since birth.

Appellant's Brief at 6.

Our review of the trial court's determination in a competency case is based on an abuse of discretion standard, recognizing, of course, that the trial court had the opportunity to observe all of the witnesses. . . .

_____

[2] At the hearing, the trial court heard testimony from the parties, an expert psychologist, Mother's family members, and various witnesses regarding the care of Daughter while she was a minor.

*In re Hyman*, 811 A.2d 605, 608 (Pa.Super.2002) (citing *In re Myers'*

*Estate*, 150 A.2d 525, 526 (Pa.1959)). "A trial court's discretion must be

exercised on the foundation of reason; an 'abuse of discretion' exists when

the trial court has rendered a judgment that is manifestly unreasonable,

arbitrary, or capricious, has failed to apply the law, or was motivated by

partiality, prejudice, bias, or ill will." *In re Duran*, 769 A.2d 497, 506

(Pa.Super.2001).

A guardian of the person is responsible for all of an incapacitated

person's care and custody. *In re Estate of Borde*r, 68 A.3d 946, 956

(Pa.Super.2013) (citing 20 Pa.C.S. § 5521). The selection of a guardian for

an incapacitated person lies within the trial court's discretion. *Estate of*

*Haertsch*, 649 A.2d 719, 720-21 (Pa.Super.1994). The Probate, Estates,

and Fiduciary Code ("the Code")[3] gives the trial court broad discretion to

appoint as guardian "any qualified individual"[4] or agency, 20 Pa.C.S. § 5511,

but the court should select the guardian based on the best interests of the

incapacitated person. *In re Duran*, 769 A.2d 497, 506 (Pa.Super.2001)

(citing *In re Estate of Dorone*, 535 A.2d 452, 454 (Pa.1987)). Section

5511(f) states that "[i]f appropriate, the court shall give preference to a

---

[3] 20 Pa.C.S. § 101 *et seq.*

[4] The term "any qualified individual" is not defined by statute, and the relevant statutory provisions do not delineate a set of factors a court must consider in appointing a guardian.

nominee of the incapacitated person." 20 Pa.C.S.A. § 5511(f); **Duran**, **supra**.

Mother does not dispute that Daughter is an "incapacitated person" as defined in Section 5501 of the Code. Appellant's Brief at 23. Instead, Mother argues the trial court erred in not appointing her as her Daughter's guardian because she is well qualified to care for Daughter, due to her role as primary caretaker since Daughter's birth. **Id.** at 25. In support, she alleges (1) that she demonstrated her ability to provide for all of Daughter's medical, dental and optical needs, and (2) that there is no evidence that she has failed to provide Daughter with proper parental care. **Id.** at 29. She contends that the appointment of Father as Daughter's guardian, "a third party who is in no way biologically or legally related to [Daughter]," gives him total and unfettered control of her affairs to the exclusion of Mother, and that the "great abuse that has now occurred is that . . . Mother has lost all custodial and parental rights to her biological child, [Daughter]," whom Mother has raised from birth. **Id.**

The trial court found Father would serve Daughter's best interests by promoting and maintaining a close network of supportive family members, providing a stable living environment, and effectuating Daughter's desire to maintain a relationship with her Mother, Father, and her half-sister. Trial Court Opinion, at 3-6. Unlike in custody proceedings, no presumption exists in guardianship proceedings in favor of selecting a family member as a

guardian of an incapacitated person. **Compare** 23 Pa.C.S. § 5327(b) (custody procedure) **with** 20 Pa.C.S. § 5511 (guardianship procedure).[5] Presumably, if the General Assembly intended to include such a presumption in guardianship proceedings, it would have included one in 20 Pa.C.S. § 5511(f) similar to 23 Pa.C.S. § 5327(b). The absence of a presumption from section 5511(f) indicates that the General Assembly does not approve of this presumption in guardianship proceedings.

The party most capable and willing to attend to Daughter's daily needs and development must be selected as her guardian. Dr. Peter Thomas, a

---

[5] Section 5327(b) of the Custody Act, which details the presumption in cases concerning primary physical custody between a parent and a third party, provides:

> In any action regarding the custody of the child between a parent of the child and a nonparent, **there shall be a presumption that custody shall be awarded to the parent**. The presumption in favor of the parent may be rebutted by clear and convincing evidence.

23 Pa.C.S.A. § 5327 (emphasis added). Conversely, Section 5511(f) of the Code provides that the court may appoint **any qualified individual,** and that a family relationship to the incapacitated person shall not be considered as an interest **adverse** to the incapacitated person. **See** 20 Pa.C.S.A. § 5511(f) ("The court may appoint as guardian any qualified individual, a corporate fiduciary, a nonprofit corporation, a guardianship support agency under Subchapter F (relating to guardianship support) or a county agency. . . . . Any family relationship to such individual shall not, by itself, be considered as an **interest adverse** to the alleged incapacitated person"). Noticeably absent from the guardianship provision is any suggestion that a family relationship to the incapacitated person shall be a beneficial interest to the incapacitated person. **See id.**

clinical psychologist, testified that in September 2012 (one year and four months prior to the hearing in the present matter), he had examined Daughter, Mother, and Father. He also conducted a follow-up evaluation with Mother in April 2013 (nine months prior to the hearing). The trial court credited Dr. Thomas's testimony and explained as follows:

> Based on his assessment of Mother and Father, Dr. Thomas described Father as possessing 'a fairly good set of skills for parenting, for nurturing, for dealing with child behavior problems, for leadership, and for his ability to provide basic care.'. Dr. Thomas also expressed having 'very significant' concerns regarding Mother's mental health, the instability in Mother's life, and [Daughter]'s safety when under Mother's care. Testimony offered by members of Mother's own family, including her sister and grandfather, demonstrates the close bond between Father and [Daughter], as well as the positive impact Father has had on [Daughter]'s life.

Trial Court Opinion, at 4. The testimony further demonstrated that Father makes a concerted effort to take Daughter to activities, such as boating, hiking, camping, rafting, biking, Zumba classes, trampolining, and rock climbing. N.T. at 27, 49-50. **See also** Appellee's Brief at 6. Accordingly, the trial court's finding that Father is qualified to act as guardian is reasonable and supported by the evidence.

Given Daughter's limited cognitive functioning, social skills, and communication skills, a guardian who will maintain family ties "ensures Jordan will have someone to care for her when Mother and Father are unavailable or unable to do so." Trial Court Opinion at 4. The trial court

noted that "Father appears to have a genuine interest in keeping Jordan connected to her entire family, including her Mother." *Id.* (citing N.T. at 43-44, 50, 61). The testimony established that Father maintains a good relationship with Daughter's maternal grandparents and great grandmother despite Mother terminating her communications with them. N.T. at 83. This is consistent with his behavior throughout 2002 to 2009, during which time he maintained a relationship with Daughter when Mother sent Daughter to her maternal grandparents on weekends. N.T. 34-35. On the other hand, the trial court found that Mother lacked the same desire to maintain family ties. *See* Trial Court Opinion at 5. The trial court reasoned:

> The testimony indicates Mother has cut ties with her sister, mother, grandfather, and great-grandmother. There is also evidence that, when [Daughter] turned 18 years['] old, Mother told Father he would never see [Daughter] again and that all future communications must go through her attorney. Mother has in fact withheld [Daughter] from Father since that time, which has also resulted in [Daughter]'s separation from her [half-]sister, Savannah. **We believe the effect of appointing Mother plenary guardian would result in the total exclusion of Father from [Daughter]'s life, and it would also severely limit the time [Daughter] is able to spend with her [half-]sister.**

Trial Court Opinion, at 5 (emphasis added). Mother's own family testified that her erratic behavior has negatively influenced Daughter. *See id.*; N.T. at 78-85. Additionally, Mother placed her own conflict with Father over

Daughter's interest in developing a healthy relationship with Daughter's half-sister. Trial Court Opinion at 5.

Given Father's pattern of facilitating contact between the parties, Father's appointment as guardian advances Daughter's expressed desires of maintaining a relationship with Mother, Father, and her half-sister Savannah.

The trial court implicitly found that Mother also would meet the requirements of being a guardian. **See** Trial Court Opinion at 6 ("We find both Mother and Father are loving parents capable of caring [for] Jordan."); Appellee's Brief at 8. However, the trial court also explained that appointing Mother and Father as co-guardians was impractical because it "would not further Jordan's best interests given the parents' inability to effectively communicate with one another to resolve disputes amicably." **Id.** at 6 (citing N.T. at 34, 38-39). The trial court observed that Mother's testimony indicates she would not even consider a co-guardian arrangement, which is also reflected in her counsel's desire for the trial court to choose one parent over the other. **See id.** (citing N.T. at 123, 162-63). The trial court reasonably found that Father would provide a steadier home life, significant contacts with Daughter's family and extended family, and a willingness to work with Mother toward Daughter's best interests. **Id. See also** N.T. 166-68. The trial court reasoned that the best way to assure that both parents

will see Daughter is by awarding guardianship to Father, given Father's desire to promote and maintain family ties. **See** Trial Court Opinion, at 5-6.

In applying the correct statutory framework and following prior cases by this Court and the Supreme Court, the trial court's decision to appoint Father as guardian was reasonable and supported by the record. We discern no error.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/7/2014</u>